NELLIE HOLUB *v.* LOUIS ROBERT KING, ADMINISTRATOR (ESTATE OF MOSES KING), ET AL.

SUPERIOR COURT   FAIRFIELD COUNTY AT BRIDGEPORT   FILE No. 109350

Memorandum filed March 1, 1960

*Sackett & Harlow,* of Fairfield, and *Robert P. Brorby,* of Oakland, California, for the plaintiff.

*Finkelstone, Finkelstone & Levy,* of Bridgeport, for the defendants.

FITZGERALD, J.   Moses King, late of New Haven, died intestate December 10, 1956, leaving a sizable estate. He had never married. By its decree of January 5, 1959, the Probate Court for the district of New Haven found as his sole heirs at law and distributees of his estate the following persons: Isaac, Louis Robert and Benjamin King as surviving brothers; and Daniel S. and Sidney King and Flor-

ence Weichsel as surviving nephews and niece, being the children of Simon King, a deceased brother. The effect of that decree is that the estate will be divided ultimately into four equal parts for distribution unless the decree is subject to revision by a higher court.

In the Probate Court, it was the claim of Nellie Holub that her mother, Rachel Waldman, late of Sag Harbor, New York, who predeceased King, bore the relationship to him of a sister of the whole blood, and that she, as the sole issue of her mother, is also an heir at law and a distributee of his estate. So also in the Probate Court it was the claim of Harold F. Greenblatt, administrator of the estate of Mary Greenblatt, that his intestate, late of New London, who survived King but who died subsequently, was also a sister of the whole blood and an heir at law and distributee of his estate. The claims of Mrs. Holub and of the administrator of the estate of Mary Greenblatt were rejected in the Probate Court after hearings thereon held. Thereafter, Mrs. Holub and the administrator of Mary's estate, in his representative capacity, each took an appeal from the decree adverse to them entered in the Probate Court for the district of New Haven to the Superior Court in New Haven County at New Haven. By stipulation of counsel, the appeals were transferred to this court, namely, the Superior Court in Fairfield County at Bridgeport.

The memorandum of decision in this case will also serve as the basic memorandum of decision in the companion case of *Harold F. Greenblatt, Administrator (Estate of Mary Greenblatt)* v. *Louis R. King, Administrator (Estate of Moses King), et al.,* Superior Court, Fairfield County, No. 109349. The cases were tried together over a span of four days in early January, 1960. The numerous exhibits introduced by the parties were marked as identical

exhibits in both cases. Most of these exhibits had also been introduced in evidence at the hearings in the Probate Court.

The following facts are not in dispute: Jacob King was born in Russia and died at New London, Connecticut, October 28, 1923. The certificate of his death gives his age as eighty-nine years and the year of his birth as 1834; his gravestone in New London carries the year of his birth as 1830. In the course of his long life, Jacob sired eight children, all of whom were born in Russia except the last two. These children, in the order of their births (the specific years somewhat uncertain as to the first six, who were born in Russia), were Rachel (who later became the wife of Max Goldman and the mother of the plaintiff Nellie Holub), Mary (who later became the wife of Barnett Greenblatt and whose estate is plaintiff in the second case), Simon (who died with issue surviving May 17, 1949), Isaac, Rose (who died without issue March 29, 1955), Moses (whose estate is a party defendant in these two cases), Benjamin and Louis Robert.

The mother of the last six named children beyond question was Jennie Levine King, who became Jacob's wife in Russia at an unascertained date. The decisive question presented in these two cases is whether Jennie was also the mother of the first two named children, namely, Rachel and Mary. The plaintiffs argue in the affirmative and the defendant administrator of the estate of Moses King in the negative. The question is one of fact and not of law. In passing, it is noted that the record of marriage of Jacob and Jennie in Russia is not obtainable; nor are the birth records of any of Jacob's children born in Russia. The same situation applies to the United States bureau of immigration as to when Jacob and Jennie came to this country and the listing of any children who accompanied them. This much is in the

realm of certitude: the difference in the ages of Jacob and Jennie was substantial. Jennie died in New London December 9, 1926. The certificate of her death gives her age as seventy-six and the year of her birth as 1850; her gravestone in New London carries the year of 1854 as the year of her birth. At least twenty years separated the ages of Jacob and Jennie.

From the exhibits before the court, it could be found that Rachel was born as early as 1862 or as late as 1872. The earlier year (1862) or close thereto is obviously the more accurate when the year of birth of Mary, the second child is considered. Without laboring the point, exhibits before the court would indicate that Mary was born in 1870 or 1871. The year of birth of Simon (admittedly a child of Jacob and Jennie) could have been as early as 1873 or as late as 1876. Reference to Simon's uncertain year of birth from the standpoint of approximation is important, because it is not disputed that he was a child of the marriage of Jacob and Jennie. That Rachel and Mary were born before Simon and the other children after Simon cannot be, and is not, questioned. Benjamin and Louis Robert are the only ones whose specific dates of birth are a matter of record and not of conjecture. Benjamin was born November 9, 1889, and Robert, April 17, 1893, at New London. Benjamin's birth certificate states on its face that he was the "5th" child of Jacob and Jennie. As is to be expected, the administrator of the estate of Moses King argues that this item is conclusive on the point that the four admittedly earlier born children of Jacob and Jennie exclude Rachel and Mary as being children born as issue of that marriage. It is of course a point to be considered, although in itself it is not conclusive. It does play a part in the evidence considered as a whole.

The death certificate of Rachel, signed by the plaintiff Nellie Holub as the informant, states that the maiden name of Rachel's mother was Molly Krug and her father Jacob King. As is to be expected, the administrator of the estate of Moses King argues that this item is conclusive that Jennie was not Rachel's mother. The plaintiff Nellie Holub would have it appear that she did not give this information and signed the certificate in ignorance of its content in regard to the name of her mother's mother, who would be her maternal grandmother. The court is not impressed with this plaintiff's repudiation of her own signed statement embodied in the death certificate issued June 1, 1937. Lastly, on May 29, 1957, Mary (in her lifetime) and her husband, Barnett Greenblatt, certified under oath, in connection with a belated registration of birth, that Louis was the sixth child born to Jacob King and Jennie Levine. This computation by Mary herself would exclude Rachel and Mary as issue of the marriage of Jacob and Jennie. The six children of that marriage could only have been Simon, Isaac, Rose, Moses, Benjamin and Louis.

Apart from the documentary evidence marked as exhibits, there was testimony presented from which the court could readily find that Rachel and Mary were much older in years than the other children as the latter were growing up. On occasion, Jacob was heard to refer to "the other litter," which could only have had reference to Rachel and Mary as his children of a former marriage or union to one other than Jennie. The court could find that Jacob was close to Mary and that in the latter years of Jennie's life she was also close to Mary and died in her home at New London and is buried in the Greenblatt cemetery lot. But these aspects do not constitute Jennie in law and in fact the mother of Mary. That Jacob was Mary's father, and the father of Rachel, is not dis-

puted. That Jennie was Jacob's wife and mother of all of Jacob's children except Rachel and Mary is the only finding compatible with the evidence as a whole.

In an interposed special defense in each case, it is alleged that "[t]he matter of blood relationship between the parties was res adjudicated by the Surrogate's Court of the State of New York, in the Estate of Rose King, late of Poughkeepsie, New York." Rose who had become a resident of Poughkeepsie, New York, died intestate and without issue March 29, 1955. Her estate was probated in the court of that jurisdiction. A finding was made by that court that the plaintiff Nellie Holub was a descendant of Rachel, a predeceased half-sister of Rose, and that Mary was a surviving half-sister of Rose. Since the statute of New York makes no distinction in inheritance between surviving brothers and sisters of the whole blood and of the half blood (contrary to the statute of Connecticut General Statutes § 45-276), Nellie, as the sole issue of her mother Rachel, and Mary shared equally in the division of that estate with those found to be of the whole blood or their representatives. It is the position of the defendant estate at bar that the finding of the New York court in the absence of an appeal and reversal has settled the question of the degree of blood relationship between all parties and is binding on the courts of Connecticut. For all that appears, the actual finding of the New York court on this point was not brought to the attention of Nellie Holub or of Mary. Since that finding did not affect the monetary position of inheritance as between Rose's brothers and sisters of the whole blood and of the half blood, under the statute of New York, the finding and decree of the New York court in itself is not considered res judicata of the question involved in the cases at bar. Hence the interposed special de-

124

fense is not deemed to be of any controlling significance and is not held sustainable as a bar to the position of the two plaintiffs. While the cases of the plaintiffs fail, they fail on the factual grounds hereinbefore considered.

In view of the foregoing, judgment may enter dismissing the appeal and affirming the decree of the Probate Court for the district of New Haven finding that Isaac King, Louis Robert King and Benjamin King are brothers of the deceased Moses King; and that Daniel S. King, Sidney King and Florence Weichsel are the nephews and niece of said deceased, being the children of Simon King, a deceased brother; and that they are the sole heirs at law of said deceased and the sole distributees of said estate.

A copy of this memorandum of decision and of the judgment entered thereon is to be forwarded by the clerk to the Probate Court for the district of New Haven. Counsel will be furnished copies of this memorandum as a matter of course.